UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KATLYN MARIE STEELE,

    PLAINTIFF,

v.

TRIDENT ASSET MANAGEMENT, LLC

    DEFENDANT.

Case No.:

*JURY TRIAL DEMANDED*

## COMPLAINT

Plaintiff Katlyn Marie Steele ("Plaintiff"), by and through the undersigned counsel, and with knowledge as to Plaintiff's own acts, upon information, belief, and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges against Defendant Trident Asset Management, LLC ("Defendant" or "Trident") as follows:

## PRELIMINARY STATEMENT

1. This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq.* ("Fair Credit Reporting Act" or "FCRA") and the Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq.* ("FDCPA"). Plaintiff alleges as follows:

2. Plaintiff is a victim of identity theft, which is one of the "fastest growing white-collar crimes in the United States. *Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 505, 2007 WL 4535267 (4th Cir 2007). Surveys have shown "between 1998 and 2003, approximately 27.3 million adults discovered they were victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone." *Id.*

3. On December 4, 2003, President George W. Bush signed into law the Fair and

Accurate Credit Transactions Act ("FACTA").[1] This legislation gives consumers unprecedented tools to fight identity theft and continued access to the most dynamic credit markets in the world. With a free credit report and powerful new tools to fight fraud, consumers can better protect themselves and their families.[2] The stated purpose of FACTA is "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information, and for other purposes."[3]

4. In 2004, according to the Federal Bureau of Investigation, "[i] Identity theft is one of the fastest growing crimes in the U.S., claiming more than 10 million victims a year.[4]"

5. Between 2000 and 2014, the Federal Trade Commission ("FTC") identified identity theft as the number one complaint made to the FTC.[5] Identity theft complaints rose back to the top and make up the number one category of complaints received by the FTC.[6]

6. In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that consumer reporting agencies ("CRA"), § 1681i, and their furnishers of information, § 1681s-2(b), must follow when consumers dispute the accuracy of the information reported in their credit reports. *See* 15 U.S.C. §§ 1681s-2(a), (2), (4), (5).

---

[2] https://georgewbush-whitehouse.archives.gov/news/releases/2003/12/20031204-3.html Last visited August 24, 2021.

[3] https://www.govinfo.gov/content/pkg/PLAW-108publ159/pdf/PLAW-108publ159.pdf Last visited August 24, 2021.

[4] https://archives.fbi.gov/archives/news/stories/2004/october/preventidt_102104 Last visited August 24, 2021.

[5] https://www.ftc.gov/news-events/press-releases/2016/03/ftc-releases-annual-summary-consumer-complaints Last visited August 24, 2021.

[6] https://www.ftc.gov/reports/consumer-sentinel-network-data-book-2020 Last visited August 24, 2021.

7. Specifically, furnishers must satisfy five duties after receipt of notice of a consumer dispute from a CRA. 15 U.S.C. § 1681s-2(b)(1)(A-E).

8. The FCRA also "provides the primary recourse for victims of identity theft." Christopher P. Couch, *Forcing the Choice Between Commerce & Consumers: Application of the FCRA to Identity Theft*, 53 Ala. L. Rev. 583, 587 (2002).

9. Thus, the FCRA holds furnishers of information, like the defendant here, responsible for taking reasonable steps to correct a consumer's credit report once she brought the theft to the CRA's attention. *See Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 506-07 (4th Cir. 2007) ("Of course, Equifax bore not responsibility for the initial theft, but the FCRA makes the company responsible for taking reasonable steps to correct Suzanne's credit report once she has brought the theft to the company's attention.").

10. Similarly, the express purpose of FDCPA is "to eliminate abusive debt collection practices by debt collectors" and "to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e).

11. The FDCPA protects consumers and imposes duties on debt collectors because "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

12. As a result of identity theft, Plaintiff's credit report included a defaulted consumer credit card account that did not belong to her. After Plaintiff disputed the inaccurate information with the credit reporting agencies and the credit reporting agencies forwarded her disputes with images of her supporting documents, Defendant failed to fully and properly investigate Plaintiff's disputes.

13. Likewise, Defendant continued to credit report the consumer debt to the credit reporting agencies despite knowledge that the debt was the result of fraud and did not belong to Plaintiff.

14. Trident has received hundreds of complaints from consumers. Over the last three years, the Consumer Financial Protection Bureau ("CFPB") has received over three hundred complaints about Trident's debt collection or credit reporting practices, or both.[7] Many complained of Tridents attempts to collect a debt that they do not owe and that is the result of fraud. *Id.*

15. Almost one-hundred complaints through the Better Business Bureau ("BBB") over the last three years earning it an "F" rating by the BBB.[8] A cursory review of the complaints made to the BBB include numerous consumers who claimed that do not owe the debt because the debt was the result of fraud. *Id.*

16. A cursory review of the Pacer docket yields over one-hundred lawsuits filed against Trident in federal court wherein an allegation that it violated the FCRA or FDCPA, or both.

17. "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA).

---

[7] https://www.consumerfinance.gov/data-research/consumer-complaints/search/?date_received_max=2021-08-24&date_received_min=2018-08-24&page=1&searchField=all&searchText=trident%20asset&size=25&sort=created_date_desc&tab=List Last visited August 24, 2021.

[8] https://www.bbb.org/us/ga/alpharetta/profile/collections-agencies/trident-asset-management-llc-0443-27255421 Last visited August 24, 2021.

18.     Despite consumer complaints and lawsuits, unlawful debt collection tactics and credit reporting remains a significant problem for identity theft victims, especially Plaintiff.

## JURISDICTION & VENUE

19.     This Court has jurisdiction pursuant to 15 U.S.C. §§ 1681p, 1692k(d) and 28 U.S.C § 1331.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district and division. The subject account was opened, used and disputed by Plaintiff from this judicial district and division.

## PARTIES

21.     Plaintiff is an adult individual and resides within this judicial district.  Plaintiff is also a "consumer" as defined by 15 U.S.C. §§ 1681a(c) and 1692a(3).

22.     Trident is a Georgia corporation with its principal place of business located at 10375 Old Alabama Rd, Alpharetta, GA 30022.  Trident is also a person who furnishes information to CRAs under 15 U.S.C. § 1681s-2[9], and conducts substantial and regular business activities in this judicial district.   Trident is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), as it principal purpose is the collection of debts owed to others and uses various instrumentality of interstate commerce to collect those debts.

## FACTUAL ALLEGATIONS

23.     Plaintiff is a victim of identity theft.

24.     In or around 2018, an impostor applied for and opened a consumer credit card account with CB Indigo, also known as Celtic Bank, hereinafter the "account."

---

[9]     Plaintiff is making a claim against Trident under § 1681s-2(b).  Plaintiff is not making a claim against said defendant under § 1681s-2(a).

25. Upon information and belief, some of the personal identifying information used in connection with the applications for credit purportedly concerned Plaintiff.

26. Plaintiff did not apply for or authorize someone on her behalf to apply for credit with the CB Indigo or Celtic Bank, or both.

27. Plaintiff did not receive any goods, benefits or services from CB Indigo or Celtic Bank, or both, in connection with the account.

28. Plaintiff discovered the account on one of her credit reports in late 2018 and disputed the account to a CRA. The CRA deleted the account and Plaintiff thought the issue was resolved.

29. Later, in 2019, Trident attempted to collect on the fraudulent account from Plaintiff.

30. Trident began credit reporting the account as a collection account and with a past due balance of $860 to at least one CRA.

31. Trident's credit reporting of the account harms Plaintiff's credit reputation because it does not accurately depict her credit history or creditworthiness, or both.

32. The account reported as a collection account and with a past due balance reduced Plaintiff's credit score and painted her as a deadbeat.

33. Plaintiff reported the theft of her identity to the Dallas Police Department.

34. Plaintiff disputed the inaccurate information to CRAs.

35. In support of her disputes, she provided the CRAs with her personal identifying information, Dallas Police Department case number, investigating officer's contact information and copies of the Police report ("identity theft report").

36. Equifax, Experian, or Trans Union notified Trident of the disputed information.

37. At least one of the CRAs provided Trident with electronic copies of Plaintiff's dispute letters and supporting documents, including the identity theft report.

38. Notwithstanding, Trident notified Equifax, Experian, or Trans Union that it verified the disputed account information and that the account belonged to Plaintiff.

39. As a part of any FCRA investigation, Defendant did not:

   a. contact Plaintiff concerning the accuracy of the disputed information;

   b. contact third parties, including but not limited to the original creditor or law enforcement, concerning the accuracy of the disputed information;

   c. review underlying account documents, such as any applications for credit;

   d. conduct any handwriting analysis on Plaintiff's signature or the signatures associated with the account, and in its own records;

   e. make a reasonable inquiry into the disputed information, including a review of the identity theft report supplied by Plaintiff;

   f. review all relevant information provided by a consumer reporting agency pertaining to the disputed information;

   g. modify or delete the false account information; or,

   h. mark or identify the account as in dispute.

40. At best, Trident verified the false account information by confirming some of Plaintiff's personal identifying information related to the account with some of the personal identifying information reported by a consumer reporting agency or supplied to it by the original creditor, or both.

41. Trident notified at least one CRA that its reporting of the inaccurate information was accurate.

42. Upon information and belief, Trident notified at least one consumer reporting agency that its reporting of the inaccurate information reported was accurate after receipt of a fraud block notification from a consumer reporting agency.

43. Upon information and belief, Trident notified at least one consumer reporting agency that its reporting of the inaccurate information reported was accurate after receipt of the Identity Theft Report from a consumer reporting agency.

44. Trident did not conduct a reasonable investigation with respect to the disputed information.

45. As of result of Defendant's conduct, Plaintiff has suffered unique and distinct actual damages in the form of adverse credit action, denial of credit, reduction in credit, lost credit opportunities, harm to credit reputation and credit score, out-of-pocket expenses, interference with Plaintiff's normal and usual activities and emotional distress, including anxiety, frustration, embarrassment and humiliation.

46. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendant.

47. At all times pertinent hereto, the conduct of Defendant, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

48. Defendant's conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious and distinct injuries to Plaintiff that are outlined more fully above and, as a result, Defendant is liable to Plaintiff for the full amount of statutory, actual and

punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief as may be permitted by law for their violations of federal law.

## COUNT ONE - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. 1681s-2(b)(1)(A)

49. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

50. On multiple occasions within the past two years, by example only and without limitation, Trident failed to comply with the requirements of the FCRA, including Section 1681s-2(b)(1)(A), by failing to fully and properly investigate Plaintiff's disputes.

51. When Plaintiff disputed the fraudulent account with the CRAs, Defendant used a dispute system named "e-OSCAR," which has been adopted by the CRAs and their furnisher customers, including Defendant.

52. E-OSCAR is an automated system and the procedures used by the CRAs are systematic and uniform.

53. When a CRA receives a consumer dispute, it (usually via an outsourced overseas vendor) translates each dispute into an automated dispute verification ("ACDV") form.

54. Upon information and belief, the ACDV form is the method by which Defendant has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

55. Upon information belief, Defendant received no less than seven (7) ACDV forms from CRAs notifying it of Plaintiff's disputes.

56. Moreover, the ACDVs supplied by the CRAs including documents supporting Plaintiff's claims, including but not limited to signature exemplars and an Identity Theft Report.

57. Defendant understood the nature of Plaintiff's disputes when it received the ACDVs.

58. Upon information and belief, when Defendant received ACDVs related to Plaintiff's disputes, it followed a standard and systematically unlawful process where it only reviewed its own internal computer screen for the account and repeated back the same information on the ACDV system that was previously reported to the CRAs.

59. Upon information and belief, when Defendant receives a dispute through e-OSCAR, it does not conduct a substantive review of any sort to determine whether the information already in its computer is itself accurate.

60. As a result of Trident's failure to comply with the requirements of § 1681s-2(b)(1)(A), Plaintiff suffered concrete and particularized actual damages, described more fully above.

61. Defendant's conduct in violating was willful, making it liable to Plaintiff for punitive for punitive and statutory damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

## COUNT TWO – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681s-2(b)(1)(B)

62. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

63. On multiple occasions within the past two years, by example only and without limitation, Trident failed to comply with the requirements of the FCRA, including Section 1681s-2(b)(1)(B), by failing to review all relevant information provided to it by the CRAs.

64. As Plaintiff detailed in the previous Count, Defendant has elected to use the e-OSCAR system for its FCRA disputes received through the CRAs.

65. Defendant is aware of the meaning of the several dispute codes used by the CRAs in e-OSCAR.

66. Defendant does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

67. Defendant understood Plaintiff's disputes and that Plaintiff claimed the account did not belong to her.

68. Defendant understood Plaintiff's disputes and that Plaintiff claimed the account was opened due to fraud.

69. Defendant understood the nature of Plaintiff's disputes and that Plaintiff claimed she was a victim of identity theft.

70. As a result of Defendant's failure to comply with the requirements of Section 1681s-2(b)(1)(B), Plaintiff suffered concrete and particularized actual damages, described more fully above.

71. Defendant's conduct in violating was willful, making it liable to Plaintiff for punitive for punitive and statutory damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

72. As a result of Defendant's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury.

**COUNT THREE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C § 1681s-2(b)(1)(C) and (D)**

73. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

74. On multiple occasions within the past two years, by example only and without limitation, Trident failed to comply with the requirements of the FCRA, including Sections 15 U.S.C § 1681s-2(b)(1)(C) and (D), by publishing its representations within Plaintiff's credit files without also including a notation that her account was disputed and by failing to correctly report the results of an accurate investigation to each CRA.

75. Specifically, Defendant failed to add the "XB" or "XC" code to the Compliance Condition Code ("CCC") field in its ACDV responses to the CRAs, which would have indicated the account was in dispute by Plaintiff.

76. Upon information and belief, Plaintiff alleges Defendant rarely, if ever, adds the XB or XC code or other notation that an account was disputed when it responded to the ACDVs.

77. Defendant knows the XB CCC code neutralizes the effect of the derogatory account on a consumer's FICO score.

78. Furthermore, Defendant was on notice that Plaintiff disputed the account through her dispute letters to the CRAs.

79. Plaintiff's disputes were bona fide as the account was fraudulently opened by an impostor, which has been confirmed by the original creditor.

80. Defendant knows, or should know, that the original creditor determined the account was opened due to fraud.

81. As a result of Trident's failure to comply with the requirements of Sections 15 U.S.C § 1681s-2(b)(1)(C) and (D), Plaintiff suffered concrete and particularized actual damages, described more fully above.

82. Defendant's conduct in violating was willful, making it liable to Plaintiff for punitive for punitive and statutory damages in an amount to be determined pursuant to 15 U.S.C.

§ 1681n. In the alternative, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

83. As a result of Defendant's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury.

**COUNT FOUR – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

84. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

85. Trident furnished inaccurate information about the account or Plaintiff, or both, to at least one CRA.

86. The above reporting of the inaccurate information to a CRA by are "communications" relating to a "debt" as defined by 15 U.S.C. §§ 1692a(2) and 1692a(5) of the FDCPA.

87. Any alleged debts at issue arose out of a transaction which was primarily for personal, family or household purposes.

88. Trident violated the FDCPA.

89. Trident's FDCPA violations include, but are not limited to, violations of 15 U.S.C. §§ 1692e(2)(A), 1692e(8), 1692e(10) and 1692f, as evidenced by the following conduct:

    a. The false representation of the amount, character or legal status of a debt;

    b. Communicating or threatening to communicate to any person credit information which is known, or which should be known, to be false; and,

    c. Otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect a debt from the Plaintiff.

90. Trident's acts as described above were done with intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay monies relating to the inaccurate information.

91. As a result of the above violations of the FDCPA, Trident is liable to Plaintiff in the sum of Plaintiff's statutory damages, actual damages and attorney's fees and costs.

## JURY DEMAND

92. Plaintiff requests a jury trial on all claims.

## PRAYER

Wherefore, Plaintiff prays for judgment against Defendant as follows:

On the First Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and
4. Attorneys' fees and costs.

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and
4. Attorneys' fees and costs.

On the Third Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

On the Fourth Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

Respectfully submitted,

*/s/ Micah S. Adkins*
Micah S. Adkins
TX BAR NO. 24088777
**THE ADKINS FIRM, P.C.**
1025 Westhaven Blvd., Suite 220
Franklin, Tennessee 37064
T:  (615) 370.9659
F:  (205) 208.9632
E:  MicahAdkins@ItsYourCreditReport.com
*COUNSEL FOR PLAINTIFF*
*KATLYN MARIE STEELE*